No. 23-13914
*(consolidated with Nos. 23-13916 & 23-13921)*

IN THE

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

———

Alpha Phi Alpha Fraternity, Inc., et al.,
*Plaintiffs-Appellees,*

v.

Secretary of State of Georgia,
*Defendant-Appellant,*

———

On Appeal from the United States District Court for the
Northern District of Georgia, Atlanta Division
No. 1:21-cv-05337 — Steve C. Jones, Judge

———

**BRIEF OF AMICUS CURIAE
THE NATIONAL REPUBLICAN REDISTRICTING TRUST
IN SUPPORT OF DEFENDANT-APPELLANT**

———

Jason B. Torchinsky*
 *Counsel of Record*
Zack Henson
Holtzman Vogel Baran
Torchinsky & Josefiak, PLLC
2300 N Street, NW, Ste 643A
Washington, DC 20037
Phone: (202) 737-8808
Fax: (540) 341-8809
jtorchinsky@holtzmanvogel.com
*Counsel for Amicus Curiae*

No. 23-13916
*(consolidated with Nos. 23-13914 & 23-13921)*

IN THE

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

————

Coakley Pendergrass., et al.,
*Plaintiffs-Appellees,*

v.

Secretary of State of Georgia,
*Defendant-Appellant,*

————

On Appeal from the United States District Court for the
Northern District of Georgia, Atlanta Division
No. 1:21-cv-05339 — Steve C. Jones, Judge

————

**BRIEF OF AMICUS CURIAE
THE NATIONAL REPUBLICAN REDISTRICTING TRUST
IN SUPPORT OF DEFENDANT-APPELLANT**

————

Jason B. Torchinsky*
 *Counsel of Record*
Zack Henson
Holtzman Vogel Baran
Torchinsky & Josefiak, PLLC
2300 N Street, NW, Ste 643A
Washington, DC 20037
Phone: (202) 737-8808
Fax: (540) 341-8809
jtorchinsky@holtzmanvogel.com
*Counsel for Amicus Curiae*

No. 23-13921
*(consolidated with Nos. 23-13914 & 23-13916)*

IN THE

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

————

Annie Lois Grant, et al.,
*Plaintiffs-Appellees,*

v.

Secretary of State of Georgia,
*Defendant-Appellant,*

————

On Appeal from the United States District Court for the
Northern District of Georgia, Atlanta Division
No. 1:22-cv-00122 — Steve C. Jones, Judge

————

**BRIEF OF AMICUS CURIAE
THE NATIONAL REPUBLICAN REDISTRICTING TRUST
IN SUPPORT OF DEFENDANT-APPELLANT**

————

Jason B. Torchinsky*
 *Counsel of Record*
Zack Henson
Holtzman Vogel Baran
Torchinsky & Josefiak, PLLC
2300 N Street, NW, Ste 643A
Washington, DC 20037
Phone: (202) 737-8808
Fax: (540) 341-8809
jtorchinsky@holtzmanvogel.com
*Counsel for Amicus Curiae*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

I hereby certify that the following persons and entities may have an interest in the outcome of this case:

Albert M. Pearson LLC, Counsel for Amicus;

Allensworth, Robert M., Attempted Amicus;

Alpha Phi Alpha Fraternity, Inc., APA Plaintiff;

Adegbile, Debo, Counsel for APA Plaintiffs;

Allen, De'Ericka, Counsel for APA Plaintiffs;

American Civil Liberties Union Foundation, Inc., Counsel for Plaintiffs;

Arbuthnot, Jacqueline Faye, Grant Plaintiff;

Bokat-Lindell, Noah B., Counsel for Intervenor U.S. Department of Justice;

Boone, Robert, Counsel for APA Plaintiffs;

Bowles, Jasmine, Amicus;

Bowen, Brennan, Counsel for Amicus Curiae National Republican Redistricting  Trust;

Boyle, Jr., Donald P., Counsel for Defendant;

Brown, Phil, APA Plaintiff;

Brown, Theron, Grant Plaintiff;

Bush, Jacquelyn, Grant Plaintiff;

Calvo-Friedman, Jennessa, Former Counsel for APA Plaintiffs;

Carr, Christopher M., Counsel for Defendant;

Cheung, Ming, Counsel for APA Plaintiffs;

Common Cause, Amicus;

Conner, Mary Nell, Grant Plaintiff;

Crowell & Moring LLP, Counsel for Amicus;

Data, Sonika, Counsel for APA Plaintiffs;

Draper, Paul, Counsel for Defendant;

Georgia Department of Law, Counsel for Defendant;

Davis, Alexander S., Counsel for Amicus;

Dechert LLP, Counsel for Amicus;

DiGiuseppe, Marisa A., Counsel for APA Plaintiffs;

Dixit, Anuj, Counsel for APA Plaintiffs;

Douglas, Maura, Counsel for APA Plaintiffs;

Duffey, Jr., William S., Former Defendant in Grant and
Pendergrass;

Election Law Clinic at Harvard Law School, Amicus;

Elias Law Group LLP, Counsel for Grant and Pendergrass
Plaintiffs;

Fair Districts GA, Amicus;

Flynn, Erin H., Counsel for Intervenor;

Ford, Christina Ashley, Counsel for Grant and Pendergrass
Plaintiffs;

Freeman, Daniel J., Counsel for Intervenor;

GALEO Latino Community Development Fund, Inc., Amicus;

Garabadu, Rahul, Former Counsel for APA Plaintiffs;

Geaghan-Breiner, Charlotte, Counsel for APA Plaintiffs;

Genberg, Jack, Counsel for Amicus;

Georgia Coalition for the People's Agenda, Amicus;

Georgia State Conference of the NAACP, Amicus;

Ghazal, Sara Tindall, Former Defendant in Grant and

Pendergrass;

Glaze, Ojuan, Pendergrass Plaintiff;

Glenn, Katie Bailey, APA Plaintiff;

Grant, Annie Lois, Grant Plaintiff;

Graves, Cheryl, Amicus;

Greenbaum, Jon, Counsel for Amicus;

Greenwood, Ruth M., Counsel for Amicus;

Hamilton, Kevin J., Former Counsel for Grant and Pendergrass

Plaintiffs;

Harrison, Keith, Counsel for Amicus;

Hawley, Jonathan Patrick, Counsel for Grant and Pendergrass

Plaintiffs;

Heard, Bradley E., Counsel for Amicus;

Heaven, Astor H.L., Counsel for Amicus;

Hennington, Elliott, Pendergrass Plaintiff;

Hessel, Daniel J., Counsel for Amicus;

Houk, Julie M., Counsel for Amicus;

Howell, Quentin T., Grant Plaintiff;

Isaacson, Cory, Counsel for APA Plaintiffs;

Ivey, Marvis McDaniel, Amicus;

Jacoutot, Bryan F., Counsel for Defendant;

Jackson, Toni Michelle, Counsel for Amicus;

James, Triana Arnold, Grant and Pendergrass Plaintiff;

Jamieson, Nathan, Counsel for Amicus;

Johnston, Janice W., Former Defendant in Grant and Pendergrass;

Jones, Michael Brandon, Counsel for Grant and Pendergrass Plaintiffs;

Jones, Steve C., Judge, U.S. District Court, Northern District of Georgia;

Kastorf Law LLP, Counsel for Amicus;

Kastorf, Kurt, Counsel for Amicus;

Khanna, Abha, Counsel for Grant and Pendergrass Plaintiffs;

Kim, Eliot, Former Counsel for APA Plaintiffs;

Kim, Taeyoung, Counsel for APA Plaintiffs;

Krevolin & Horst LLC, Counsel for Grant and Pendergrass

iv

Plaintiffs;

Lakin, Sophia Lin, Counsel for APA Plaintiffs;

LaRoss, Diane F., Counsel for Defendant;

Lawyers' Committee for Civil Rights Under Law, Counsel for Amicus;

Le, Anh, Former Defendant in Grant and Pendergrass;

League of Women Voters of Georgia, Amicus;

Lee, Theresa J., Counsel for Amicus;

Lewis, Joyce Gist, Counsel for Grant and Pendergrass Plaintiffs;

Lindsey, Edward, Former Defendant in Grant and Pendergrass;

Love-Olivo, Cassandra Nicole, Counsel for Amicus;

Mashburn, Matthew, Former Defendant in Grant and Pendergrass;

May, Caitlyn Felt, Counsel for APA Plaintiffs;

McGowan, Charlene, Former Counsel for Defendant;

Miller, Alex W., Counsel for APA Plaintiffs;

Miller, Kelsey A., Counsel for APA Plaintiffs;

Mitchell, Cassandra, Counsel for APA Plaintiffs;

National Republican Redistricting Trust, Amicus;

O'Donnell, Courtney, Counsel for Amicus;

Osher, Daniel C., Former Counsel for Grant and Pendergrass Plaintiffs;

Paradise, Loree Anne, Former Counsel for Defendant;

Pearson, III, Albert Matthews, Counsel for Amicus;

Pendergrass, Coakley, Pendergrass Plaintiff;

Perkins Coie LLP, Former Counsel for Grant and Pendergrass Plaintiffs;

Perkins, Brianne, Amicus;

Petrany, Stephen J., Solicitor General, Counsel for Defendant;

Raffensperger, Brad, Defendant in his official capacity as Secretary of State of Georgia;

Reynolds, Garrett, Grant Plaintiff;

Richards, Roberts, Pendergrass Plaintiff;

Rollins-Boyd, David, Counsel for Amicus;

Rosenberg, Ezra D., Counsel for Amicus;

Rueckert, Jens, Pendergrass Plaintiff;

Ruiz Toro, Juan M., Counsel for APA Plaintiffs;

Rutahindurwa, Makeba, Counsel for Grant and Pendergrass Plaintiffs;

Savitsky, Ari J., Counsel for APA Plaintiffs;

Shaw, Abigail, Former Counsel for APA Plaintiffs;

Sivaram, Anuradha, Former Counsel for APA Plaintiffs;

Sixth District of the African Methodist Episcopal Church, APA Plaintiff;

Solomon, Elbert, Grant Plaintiff;

Southern Poverty Law Center, Counsel for Amicus;

Sparks, Adam M., Counsel for Grant and Pendergrass Plaintiffs;

Smith, Casey Katherine, Counsel for APA Plaintiffs;

Steiner, Neil, Counsel for Amicus;

Stewart, Janice, APA Plaintiff;

Stewart, Michael Elliot, Counsel for Intervenor;

Strickland, Frank B., Counsel for Defendant;

Sullivan, Rebecca N., Former Defendant in Grant and

Pendergrass;

Sykes, Eunice, Grant Plaintiff;

Taylor English Duma LLP, Counsel for Defendant;

Thomas, Ursula, Amicus;

Tolbert, Elroy, Grant Plaintiff;

Torchinsky, Jason, Counsel for Amicus Curiae National Republican

Redistricting Trust;

Tsai, Denise, Counsel for APA Plaintiffs;

Tyson, Bryan P., Counsel for Defendant;

United States Department of Justice, Intervenor;

Varghese, George P., Counsel for APA Plaintiffs;

Vaughan, Elizabeth Marie Wilson, Former Counsel for Defendant;

Webb, Bryan K., Counsel for Defendant;

Weigel, Daniel H., Counsel for Defendant;

Weitzman, Samuel, Former Counsel for APA Plaintiffs;

White, Graham, Former Counsel for Grant and Pendergrass Plaintiffs;

Willard, Russell D., Counsel for Defendant;

Williams, Ayana, Former Counsel for APA Plaintiffs;

Williams, H. Benjamin, Amicus;

Williams, Edward Henderson, Counsel for APA Plaintiffs;

Wilmer Cutler Pickering Hale and Dorr LLP, Counsel for APA Plaintiffs;

Wimbish, Dexter, Grant Plaintiff;

Woods, Eric T., APA Plaintiff;

Young, Sean Jengwei, Former Counsel for APA Plaintiffs;

Zabel, Joseph D., Former Counsel for APA Plaintiffs.


February 14, 2024

/s/ Jason Torchinsky

**Jason Torchinsky**

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT .......................................................................i

TABLE OF AUTHORITIES.........................................................................x

INTEREST OF AMICUS CURIAE ...........................................................1

SUMMARY OF THE ARGUMENT ...........................................................1

STATEMENT OF THE ISSUE....................................................................3

ARGUMENT ...............................................................................................3

    I.   Plaintiff-Appellees Must Establish "Causation" to Succeed on Their
        Claims Under Section 2. ............................................................4

        A.  Section 2 Requires a Finding of Causation, Which Is an
            Abridgement of The Right to Vote "On Account of Race or
            Color." ..............................................................................4

        B.  Eleventh Circuit Precedent Requires a Showing of "Causation"
            for Claims Under Section 2 of the Voting Rights Act. .........8

        C.  Post-Gingles Courts Have Determined that "Correlation" Alone
            Is Insufficient to Establish a Violation Under Section 2. ....10

    II.  The District Court's Erroneous Reading of Section 2—Which
       Requires Only A Showing Of Correlation and Not Causation—
       Codifies Electoral Advantages for the Democratic Party. .........15

CONCLUSION ..........................................................................................20

CERTIFICATE OF COMPLIANCE..........................................................21

CERTIFICATE OF SERVICE ...................................................................23

## TABLE OF AUTHORITIES

**Cases**

*Ala. State Conf. of the NAACP v. Alabama*,
   No. 2:16-CV-731-WKW [WO], 2020 U.S. Dist. LEXIS 18938
   (M.D. Ala. Feb. 5, 2020) ......................................................................15

*Allen v. Milligan*,
   143 S. Ct. 1487 (2023) ...................................................................... 12

*Alpha Phi Alpha Fraternity Inc. v. Raffensperger*,
   2023 U.S. Dist. LEXIS 192080 (N.D. Ga. Oct. 26, 2023) .......... 5, 14, 16, 18, 19

*Brnovich v. Democratic Nat'l Comm.*,
   141 S. Ct. 2321 (2021) ............................................... 2, 5, 12, 13, 14

*Chisom v. Roemer*,
   501 U.S. 380 (1991) .......................................................... 11

*Conn. Nat'l Bank v. Germain*,
   503 U.S. 249 (1992) .......................................................... 11

*Davis v. Bandemer*,
   478 U.S. 109 (1986) ...................................................... 16, 17

*Frank v. Walker*,
   768 F.3d 744 (7th Cir. 2014) ....................................... 7, 10

*Gonzalez v. Arizona*,
   677 F.3d 383 (9th Cir. 2012) ........................................... 10

*Greater Birmingham Ministries v. Sec'y of State of Ala.*,
   992 F.3d 1299 (11th Cir. 2021) ........................................ 2, 8, 9, 14

*Johnson v. Governor of Florida*,
   405 F.3d 1214 (11th Cir. 2005).................................... 12, 20

*Lee v. Va. State Bd. of Elections*,
   843 F.3d 592 (4th Cir. 2016) ........................................... 9

*Lopez v. Abbott*,
   339 F. Supp. 3d 589 (S.D. Tex. 2018) ................................. 15

*Mobile v. Bolden*,
446 U.S. 55 (1980) ............................................................ 5

*NLRB v. SW Gen., Inc.*,
580 U.S. 288 (2017) .......................................................... 5

*Ohio Democratic Party v. Husted*,
834 F.3d 620 (6th Cir. 2016) ........................................... 10

*Rucho v. Common Cause*,
139 S. Ct. 2484 (2019) ........................................ 2, 12, 13, 18, 19

*Speech First, Inc. v. Cartwright*,
32 F.4th 1110 (11th Cir. 2022) ..................................... 3, 19

*Colo. Republican Fed. Campaign Comm. v. FEC*,
518 U.S. 604 (1996) ....................................................... 19

*Thornburg v. Gingles*,
478 U.S. 30 (1986) ................................................... *passim*

*Vieth v. Jubelirer*,
541 U.S. 267 (2004) ......................................................... 6

**Statutes**

52 U.S.C. § 10301 ............................................................ *passim*

**Other**

Governor of Georgia, Ballotpedia (accessed February 13, 2024) ............................8

Perry Beacon Jr., More people of color are voting Republican That's not all
bad news, Washington Post (October 3, 2023).....................................16

Stef W. Kight, Charted: GOP made inroads with women, Hispanic voters in
midterms, Axios (July 13, 2023) ........................................16

Tim Reid, Hispanic support for Trump raises flag for Biden,
Reuters (December 16, 2023).................................................16

## INTEREST OF AMICUS CURIAE[1]

The National Republican Redistricting Trust, or NRRT, is the central Republican organization tasked with coordinating and collaborating with national, state, and local groups on a fifty-state congressional and state legislative redistricting effort for 2020 and for decades to come. Its mission is threefold: (1) guarantee that redistricting faithfully follows all federal constitutional and statutory mandates; (2) verify that redistricting results in districts that are sufficiently compact and preserve communities; and (3) ensure that redistricting makes sense to voters.

## SUMMARY OF THE ARGUMENT

Under the guise of a *racial* gerrymandering claim, Plaintiff-Appellees have weaponized Section 2 of the Voting Rights Act ("VRA") to codify electoral advantages for the Democratic Party.  They appeal here because, while they achieved the racial outcome they were seeking, they failed to achieve the true partisan goal of the litigation.

---

[1] Pursuant to Fed. R. App. P. 29(a), no party or party's counsel authored this brief in whole or in part; no party or party's counsel contributed money to fund the preparation or submission of this brief; and no other person except amicus curiae, their members, or their counsel contributed money intended to fund the preparation or submission of this brief. On February 13, 2024, counsel for Amicus contacted all counsel requesting consent. As of the date of this filing, counsel for Amicus have not received a response.

Rather than following *Rucho v. Common Cause*, 139 S. Ct. 2484, 2508 (2019)—which prohibits the courts from deciding *partisan* gerrymandering—the district court misapplied *Thornburg v. Gingles*, 478 U.S. 30 (1986) and improperly rejected the Secretary of State's ("Secretary's") argument that partisanship—rather than race—drives polarization in Georgia election results. At bottom, the district court failed to comprehend that Section 2 requires a finding of causation—and not merely correlation—for the Plaintiff-Appellees to succeed on their claims.

Specifically, the district court was incorrect when it determined that "causation" was not a perquisite for establishing a Section 2 claim. Conflating "intent" and "causation," the district court correctly noted that "intent" is not a prerequisite for a Section 2 claim, but incorrectly determined that "causation" was not required in the Section 2 analysis. Under the district court's reading of Section 2, racially correlated disparities are sufficient to establish a Section 2 claim. This is incorrect, as the plain language of Section 2 establishes that the relevant consideration is racial disparities caused "on account of race or color," 52 U.S.C. § 10301(a). The district court's reading is entirely divorced from the text of the VRA, Supreme Court precedent in *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2337 (2021), and this Court's precedent in *Greater Birmingham Ministries v. Sec'y of State of Ala.*, 992 F.3d 1299, 1330 (11th Cir. 2021) (stating that "the challenged

law has to "result in" the denial or abridgement of the right to vote on account of race.").

The district court's erroneous interpretation of Section 2 codifies an electoral sword for Democratic candidates to strike down unfavorable electoral maps and to seek judicially ordered maps that ultimately achieve their partisan goals. It is manifestly improper for the courts to make such political determinations. *See Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1127 (11th Cir. 2022) (prohibiting the government from deciding the winners and losers in the marketplace of ideas); For these reasons, this Court must reverse.

## STATEMENT OF THE ISSUE

Whether the district court erred when it found that claims under § 2 of the Voting Rights Act do not require proof of causation and whether the district court improperly determined that Georgia's electoral districts violate § 2.

## ARGUMENT

Departing from the text of the VRA, Supreme Court precedent, and this Court's precedent, the district court misapplied the law and accepted Plaintiffs' invitation to enter the political arena to aid the Democratic Party. This is an unconstitutional application of judicial power, and it should be reversed.

The district court's act of disregarding the "causation" requirement of Section 2 opens the courtroom doors to any party that seeks to expand its own

political power by simply garnering the support of a minority voting bloc that votes in high numbers for that party. Then, by dressing up a partisan gerrymandering claim as a racial gerrymandering claim, that political party can secure judicial protection of that voting bloc through Section 2 under the district court's interpretation. Today, that political party is the Democratic Party, but tomorrow it may be the Republican Party. Either way, it is manifestly improper for the courts to engage in this partisan electoral decision-making through the guise of racial gerrymandering. The VRA was enacted with the goal of protecting the voting rights of minorities; not the ability of Democrats to elect Democrats. This Court must not permit such perversion of the VRA.

## I. Plaintiff-Appellees Must Establish "Causation" to Succeed on Their Claims Under Section 2.

### A.  Section 2 Requires a Finding of Causation, Which Is an Abridgement of The Right to Vote "On Account of Race or Color."

Section 2 of the VRA states that "[n]o voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any state or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote *on account of race or color*." 52 U.S.C. § 10301(a) (emphasis added). Under Subsection 2(b), the Plaintiff-Appellees must demonstrate that the political process is "not equally open … in that its members have less opportunity than other members of the electorate to

4

participate in the political process and to elect representatives of their choice." *Id.*
at § 10301(b). Subsections 2(a) and 2(b) must be read together. *See Brnovich,* 141
S. Ct. at 2337 (stating that Sections 2(a) and 2(b) inform the reading of one
another).  It is also "a cardinal principle of statutory construction that [courts] must
give effect, if possible, to every clause and word of a statute." *NLRB v. SW Gen.,
Inc.,* 580 U.S. 288, 304 (2017) (citation omitted). Thus, the language "on account
of race" must be given effect in the reading of Section 2 of the VRA, which
establishes a "causation" requirement.

By its plain language, Section 2(a) limits the applicability of Section 2 to
government actions affecting the voting rights of racial minority groups because
this subsection proscribes voting qualifications or prerequisites that deny or abridge
voting rights "on account of race or color." 52 U.S.C. § 10301(a). As evidenced by
the language of Section 2(a), Section 2 was enacted to remedy the malfeasances of
intentional discrimination against *racial* minorities in the political process. *See
Mobile v. Bolden*, 446 U.S. 55, 60–61 (1980). The district court is correct in
observing that the intent requirement for a Section 2 claim has been eliminated.
*Alpha Phi Alpha Fraternity Inc. v. Raffensperger*, 2023 U.S. Dist. LEXIS 192080,
*214 n. 69. However, the court conflates "intent" and "causation" and erroneously
determines that neither are required. *Id.* at *371. Despite the jettison of the "intent"
requirement, the class of citizens protected under Section 2 has remained

5

unchanged: minority voters whose rights have been abridged or denied "on account of race or color." With this classification clearly identified, Section 2(a) also establishes, through its 1982 amendment (codified as Section 2(b)), that a statutory violation is demonstrated using the "totality of the circumstances" test.

Under the "totality of the circumstances" test, Section 2(b) mandates that plaintiffs demonstrate "the political processes leading to nomination or election in the state or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a)." 52 U.S.C. § 10301(b). Reading the statute as a whole, in conjunction with Section 2(a), Section 2(b) requires a showing that a government action has impacted minority voters *because of* their race. Section 2(b) further explains that a plaintiff can demonstrate "not equally open" participation if the racial minority voting groups "have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." *Id.*

There are many factors that could result in "less opportunity" to "elect representatives of [one's] choice," but the one factor that transcends race, socio-economic status, and state borders is political partisanship. *See Vieth v. Jubelirer,* 541 U.S. 267, 287 (2004) (plurality op.) ("Political affiliation is not an immutable characteristic, but may shift from one election to the next; and even within a given election, not all voters follow the party line.").  In every state across the country,

6

political partisanship results in the loss of electoral opportunity in every election. If just one losing vote is cast in a partisan election, partisanship inevitably results in "less opportunity" to "elect the representative of [one's] choice" for the citizen casting a losing vote. From a Republican constituent voting in the New York City Mayor's race to a Democrat constituent voting in the Florida Governor's race, this partisanship phenomenon affects voters across every state in every election cycle. But, of course, simply losing an election is not sufficient to establish a Section 2 claim. Section 2 was enacted to ensure equal access to the political process for minority voters and to prohibit any government action that denies or abridges minority voting rights *on account of race*. Section 2 was not enacted to remedy partisanship nor aid one political party over another based on their support among minority voters. *See Frank v. Walker*, 768 F.3d 744, 754 (7th Cir. 2014).

In Georgia, the state has two Democratic Senators – and in accordance with evidence produced in the District Court, these two candidates are the "candidates of choice" of the vast majority of Black voters in Georgia. These candidates were elected with votes from white voters. One of the two Democratic Senators is black, and was elected in a general election where both major parties nominated black candidates. State races for Governor included black candidates and have been

close.[2]  The evidence before the District Court demonstrates that Black voter preference for Democratic Party candidates in general elections appears unconnected to the race of the candidate – further plain support that black support for the Democratic Party is based on partisan preferences and not "on account of" race.

**B. Eleventh Circuit Precedent Requires a Showing of "Causation" for Claims Under Section 2 of the Voting Rights Act.**

This Court has determined that Section 2 mandates Plaintiff-Appellees to demonstrate that a "challenged law … caused" them, "on account of race or color," to have "less opportunity" to "elect the representative of their choice." *Greater Birmingham Ministries v. Sec'y of Ala.*, 992 F.3d 1299, 1330 (11th Cir. 2021) (quoting 52 U.S.C. § 10301(a)). In *Greater Birmingham Ministries*, the plaintiffs challenged Alabama's voter ID law under Section 2. *Id.* The plaintiffs alleged "disparate voter ID possession rates and disparate burdens placed on minority voters[,]" including "travel disparities, socioeconomic disparities, and lack of Spanish-language materials." *Id.* at 1329. The plaintiffs argued that these disparities—which were correlated with race but not "on account of race"—were sufficient to establish a Section 2 claim. *Id.* at 1330. This Court disagreed. Noting that "minority voters in Alabama are slightly more likely than white voters not to

_____

[2]  Governor of Georgia, Ballotpedia (accessed February 13, 2024), https://ballotpedia.org/Governor_of_Georgia.

have compliant IDs" and thus would be more burdened by the law, this Court nonetheless determined that "the plain language of Section 2(a) requires more" than racially disparate impacts. *Id.*

In establishing its two-part test under Section 2(a), this Court explicitly required a showing of "causation":

> First, the challenged law has to "result in" the denial or abridgement of the right to vote. Second, the denial or abridgement of the right to vote must be "on account of race or color." In other words, the challenged law must have *caused* the denial or abridgement of the right to vote on account of race.

> *Id.*

Both showings are essential to prove a violation, and the interpretation succeeds in giving full effect to the language of Section 2. With binding caselaw in this Circuit, the district court should have applied the *Greater Birmingham Ministries* test and required a showing of "causation."

This Court is joined by the Fourth Circuit, Sixth Circuit, Seventh Circuit, and Ninth Circuit in requiring a "causation" prerequisite for establishing a Section 2 claim. The Fourth Circuit upheld a Virginia voter ID law against a Section 2 challenge, affirming that disparate impact is insufficient absent a showing of causation. *See Lee v. Va. State Bd. of Elections*, 843 F.3d 592, 601 (4th Cir. 2016) ("We conclude that § 2 does not sweep away all election rules that result in a disparity in the convenience of voting."). The Sixth Circuit upheld Ohio's law

adjusting voting time periods against a Section 2 challenge, holding that plaintiffs must demonstrate that the challenged law "as opposed to non-state created circumstances[,] *actually makes voting harder*" for minority voters. *Ohio Democratic Party v. Husted*, 834 F.3d 620, 631 (6th Cir. 2016) (emphasis in original). The Seventh and Ninth Circuits have also required the showing of "causation" for Section 2 claims. *See Frank*, 768 F.3d at 753–54; *Gonzalez v. Arizona*, 677 F.3d 383, 405 (9th Cir. 2012) (en banc) ("Although proving a violation of § 2 does not require a showing of discriminatory intent, only discriminatory results, proof of 'causal connection between the challenged voting practice and a prohibited discriminatory result' is crucial." (citations omitted)).

## C. Post-*Gingles* Courts Have Determined that "Correlation" Alone Is Insufficient to Establish a Violation Under Section 2.

To prove a Section 2 claim, Plaintiff-Appellees must establish the three *Gingles* preconditions: (1) a sufficiently large and geographically compact minority, (2) that is politically cohesive, and (3) "racial bloc voting" (also known as "racially polarized voting") that prevents minority voters from having an equal opportunity to elect their preferred candidates. 478 U.S. at 50-51, 52 n.18. Plaintiffs-Appellees are also required to establish that the "totality of the circumstances" demonstrate discriminatory results. 52 U.S.C. § 10301(b).

While the three *Gingles* preconditions are oft-cited, *Gingles* itself left the courts to grapple with a lingering issue. Interpreting Section 2, the *Gingles* court

10

imported a conditional guarantee of proportional representation and seemingly rendered the "on account of race or color" language ineffective. *See Gingles*, 478 U.S. at 63. The plurality opinion in *Gingles* determined "the reasons black and white voters vote differently have no relevance to the central inquiry of § 2[,]" which in essence, disregarded any considerations of "causation" in the analysis of disparate racial effects. *Id.* The *Gingles* court instead focused the second and third factors on the *political* cohesiveness of a given racial minority and a corresponding White majority. Following *Gingles*, subsequent Supreme Court and appellate court precedent demonstrated the gaps and errors in the *Gingles* causation-less approach.

At bottom, the *Gingles* causation-less interpretation is flawed because it renders the Section 2 language "on account of race" superfluous, which contravenes the judicial principle that "courts should disfavor interpretations of statutes that render language superfluous," *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992). The illogical approach in *Gingles* was quickly redressed, as the post-*Gingles* Supreme Court held that some voting restrictions with racially disproportionate effects could survive Section 2 challenges. *See, e.g.*, *Chisom v. Roemer*, 501 U.S. 380, 383–84 (1991) (stating that the 1982 amendments to the VRA "make clear that *certain* practices and procedures that result in the denial or abridgment of the right to vote are forbidden" (initial emphasis added) (emphasis removed)). Thus, the Supreme Court and appellate courts have acknowledged that

11

the addition of Section 2(b) expanded minority voter protections beyond instances solely involving discriminatory intent, but Section 2(b) does not prohibit all voting restrictions with racially disproportionate effects. *See Johnson*, 405 F.3d at 1227–28 (finding that while "a plaintiff could establish a [Section 2] violation without proving discriminatory intent," Section 2 still "does not prohibit all voting restrictions that may have a racially disproportionate effect").

In *Rucho v. Common Cause* and *Brnovich v. Democratic Nat'l Comm.*, the Supreme Court shifted away from the causation-less inquiry under the second and third *Gingles* factors. *Rucho*, 139 S. Ct. 2484. In *Rucho*, the Supreme Court addressed First Amendment and Equal Protection Clause challenges. The Supreme Court held that partisan gerrymandering claims are not justiciable because there is no judicially manageable standard and courts are not equipped to determine the extent to which partisan motivation is improper in redistricting. *Id.* at 2508. Nonetheless, to prevail on a Section 2 challenge, the *Gingles* factors require that a minority group "show that it is politically cohesive," and "the white majority votes sufficiently as a bloc to enable it . . . to defeat the minority's preferred candidate." *Gingles,* 478 U.S. at 51. Thus, *Gingles* requires Section 2 plaintiffs to produce evidence that the *Rucho* Court explicitly stated courts are ill-equipped to consider. *See Allen v. Milligan,* 143 S. Ct. 1487, 1522-1523 (2023) (Thomas, J., dissenting).

After *Rucho*, the Supreme Court reviewed a Section 2 challenge to Arizona's precinct voting and ballot harvesting law in *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. at 2330. The Supreme Court began by observing that "statutory interpretation cases almost always start with a careful consideration of the text, and there is no reason to do otherwise" when evaluating Section 2. *Id.* at 2337. The Court then cited the language of Section 2— "on account of race or color"— and determined it "need not decide what this text would mean if it stood alone because §2(b), which was added to win Senate approval, explains what must be shown to establish a §2 violation." *Id.* The Court's analysis in *Brnovich* confirms that the "totality of the circumstances" test under Section 2(b) is to be read in conjunction with the Section 2(a) condition that injuries must be *on account* of the minority voter's race.

Moreover, the *Brnovich* Court's interpretation of the test implicitly requires causation. First, the Court acknowledged that "equal opportunity helps to explain the meaning of equal openness" in Section 2(b), which affirmed that Section 2 intends to promote equal access rather than equal electoral outcomes.  *Id.* at 2338. Second, the Court listed five factors relevant to the "totality of the circumstances" analysis—notably, including a challenged law's overall burden on voters and the size of disparities in the burden across racial minority groups. *Id.* at 2339–40. With respect to the burden disparities on racial minority groups, the Court observed "[t]o

the extent that minority and non-minority groups differ with respect to employment, wealth, and education, even neutral regulations, no matter how crafted, may well result in some predictable disparities in rates of voting." *Id.* at 2339. Thus, the Court implicitly recognized that Section 2 claims cannot solely hinge on disparate impact; rather, the disparate impact must be caused by race.

In sum, the Supreme Court and appellate courts have spent decades rectifying the errors in the second and third factor analysis first presented in *Gingles*, which improperly omitted a "causation" requirement for Section 2 claims. But despite the shortcomings of *Gingles*, this Court has properly filled the void by requiring Section 2 plaintiffs to demonstrate that a challenged law "*caused* the denial or abridgement of the right to vote *on account of* race." *Greater Birmingham Ministries*, 992 F.3d at 1330 (emphasis included in original) (emphasis added). The district court erred in failing to apply this Court's precedent. *Alpha Phi Alpha Fraternity Inc. v. Raffensperger*, 2023 U.S. Dist. LEXIS 192080, *340 (stating that "the second and third *Gingles* preconditions are results based inquiries that do not require plaintiffs to prove that race cause the polarization or disprove that party caused the polarization"). For this reason, the Court should reverse.

14

## II.   The District Court's Erroneous Reading of Section 2—Which Requires Only A Showing Of Correlation and Not Causation— Codifies Electoral Advantages for the Democratic Party.

Section 2 of the VRA was enacted to protect the voting rights of minorities. But here, it has been weaponized to attack state laws that do not align with Democrat Party interests. Recognizing the indisputably high correlation between the race of Black voters and support for Democratic candidates, the Democratic Party has used this phenomenon as a sword to allege "race discrimination" in many cases[3] in which Democratic candidates simply fail to win elections as result of political preferences—rather than on the basis of race.

It is well-documented that minority candidates on the Democratic Party line receive equal—if not greater—support than non-minority candidates. In *Ala. State Conf. of the NAACP v. Alabama*, the court noted "despite large spending disparities, losing [B]lack candidates receive a slight edge in their share of the vote over losing [W]hite candidates." No. 2:16-CV-731-WKW [WO], 2020 U.S. Dist. LEXIS 18938, at *128 (M.D. Ala. Feb. 5, 2020). The court found that Democratic candidates—regardless of race—received similar levels of support, and in fact, Black Democratic candidates could have an advantage over White Democratic

---

[3] Similar claims have been brought by Democratic Party-allied voters in Louisiana and Texas. Complaint, *Robinson et al. v. Ardoin*, No. 3:22-cv-211-SDD-RLB, (M.D. La. Mar. 30, 2022), *stayed by*, 597 U.S. 3396 (2022); Complaint, *Tex. State Conf. of the NAACP v. Abbott et al.*, No. 1:21-cv-1006 (W.D. Tex. Nov. 5, 2021).

candidates. In sum, the court concluded that "the notion that African-American candidates lose solely because of their skin color is not supported by the evidence." *Id.*  Similarly, in Texas, a federal district court concluded that Hispanic and Latino-identifying statewide judicial candidates received similar levels of support compared to White Republican candidates and White Democratic candidates. *See Lopez v. Abbott*, 339 F. Supp. 3d 589, 612-13 (S.D. Tex. 2018).

The district court's improper reading of Section 2 adopts the Plaintiff's position and, given current electoral alignments, codifies electoral advantages for the Democratic Party through allegations of race discrimination. *Alpha Phi Alpha Fraternity Inc.*, 2023 U.S. Dist. LEXIS 192080, at *371. The second *Gingles* factor requires that the Plaintiff-Appellees demonstrate minority group cohesion, while the third *Gingles* factor requires the Plaintiff-Appellees to demonstrate majority (White) group political cohesion. *Gingles*, 478 U.S. at 51. These two *Gingles* factors advance the racist myth that race and partisanship are inextricably correlated and causally linked. This is patently incorrect.[4] *See Davis* v. *Bandemer*,

---

[4] Many recent news reports demonstrate the shifting tides of minority voters identifying as and voting Republican. *See e.g.*, Tim Reid, Hispanic support for Trump raises flag for Biden, Reuters (December 16, 2023), https://www.reuters.com/world/us/hispanic-support-trump-raises-red-flag-biden-2023-12-16/ ; Stef W. Kight, Charted: GOP made inroads with women, Hispanic voters in midterms, Axios (July 13, 2023), https://www.axios.com/2023/07/13/gop-gains-women-hispanic-voters-poll-midterms; Perry Beacon Jr., More people of color are voting Republican That's not all bad news, Washington Post (October 3,

478 U.S. 109, 156 (1986) (O'Connor, J., concurring) ("[W]hile membership in a racial group is an immutable characteristic, voters can—and often do—move from one party to the other or support candidates from both parties."). In *Gingles*, Justice O'Connor, concurring with Chief Justice Burger, Justice Powell, and Justice Rehnquist, admonished: "Nothing in . . . the language and legislative history of § 2 supports the Court's creation of this right to usual, roughly proportional representation on the part of every geographically compact, politically cohesive minority group that is large enough to form a majority in one or more single-member districts." *Gingles*, 478 U.S. at 99 (O'Connor, J., concurring).

A requirement of proportionality under Section 2 would effectively codify unfair electoral advantages for whichever political party commands the support of certain minority groups. Were the courts to improperly incorporate a proportionality requirement, a Section 2 plaintiff could merely identify a bloc of minority voters—for example, Black voters in Georgia—that vote for a single party in high numbers and then dress up a partisan gerrymandering claim as a racial gerrymandering claim to satisfy the *Gingles* factors. In this scenario, the judiciary would be—and is, as exemplified in this case—codifying electoral advantages for one political party.  Given current demographic and voter trends, this judicially granted benefit accrues to the Democratic Party. Effectively, by

2023), https://www.washingtonpost.com/opinions/2023/10/03/people-of-color-voting-republican-2024/

cloaking a gripe about partisan preferences in a Section 2 veil, Plaintiffs insist the state legislature is required to draw maps that maximize Democratic vote share. This cannot be so.  This is highlighted by the Plaintiffs' objections to the remedial maps approved by the District Court.  While the newly adopted maps increase the number of majority black districts Plaintiffs ostensibly sought, they now complain that the revised maps did not increase seats likely to be won by the Democratic Party. *See generally Alpha Phi Alpha Fraternity Inc. v. Raffensperger*, 2023 U.S. Dist. LEXIS 234457.

In evaluating Section 2, the district court also errs by improperly absolving itself of the responsibility of "disentagl[ing]" the political party and race of candidates, asserting that discernment between the two is too difficult. *See Alpha Phi Alpha Fraternity Inc. v. Raffensperger,* 2023 U.S. Dist. LEXIS 192080*, *191-192 (N.D. Ga. Oct. 26, 2023). As a result, the district court allows the Plaintiff-Appellees to move forward with a partisan gerrymandering claim masquerading as a racial gerrymandering claim. As established by *Rucho*, partisan gerrymandering cases are not justiciable. Thus, the district court cannot simply throw up its hands and assert an issue is too difficult when the justiciability of the entire case is at issue.

The district court's failure to differentiate between political partisanship and race has the direct effect of codifying electoral advantages for the Democratic

18

Party in Georgia with respect to black voters for now, but the correlation argument could lead to a different minority group correlated with a different political party in the future. The district court's indiscriminate protection of the Democratic Party and its ideas is a direct violation of the First Amendment. *Colo. Republican Fed. Campaign Comm. v. FEC*, 518 U.S. 604, 616 (1996) ("The independent expression of a political party's views is 'core' First Amendment activity no less than is the independent expression of individuals, candidates, or other political committees." (citations omitted)), Under the guise of racial gerrymandering, the district court has entered the political arena and decided a political gerrymandering case—one that is clearly not justiciable in the federal courts. *See Rucho*, 139 S. Ct. at 2508 (holding that partisan gerrymandering is a non-justiciable political issue); *Speech First, Inc.*, 32 F.4th at 1127 ("In prohibiting only one perspective, [the government] targets 'particular views taken by' students, and thereby chooses winners and losers in the marketplace of ideas—which it may not do" (citations omitted)).

The district court's interpretation of Section 2 results in the courts having to address an impermissible constitutional question. Based on its plain text and Eleventh Circuit precedent, Section 2 contains a "causation" requirement; this reflects Congress's clear intent as evidence by its language: "on account of race or color." 52 U.S.C. § 10301(a). Nonetheless, the district court departs from the text and binding precedent to manufacture an interpretation that implicates the statute's

constitutionality. *Alpha Phi Alpha Fraternity Inc.*, 2023 U.S. Dist. LEXIS 192080, at \*371.

The district court's erroneous interpretation of Section 2—which excludes the "causation" requirement—contravenes the "long-standing rule of statutory interpretation that federal courts should not construe a statute to create a constitutional question unless there is a clear statement from Congress endorsing this understanding." *Johnson*, 405 F.3d at 1229. When faced with a potential constitutional question, courts must "first address whether one interpretation presents grave constitutional questions whereas another interpretation would not, and then examine whether the latter interpretation is clearly contrary to Congressional intent." *Id.* Here, the district court failed to abide by this core principle of judicial interpretation.

The district court should have decided this case based on the plain text of the VRA and Eleventh Circuit precedent clearly requiring a "causation" prerequisite for Section 2 claims. Instead, the district court dragged the court system into the political arena. The district court's error flies in the face of core judicial principles of constitutional avoidance and restraint. Its decision must be reversed.

## CONCLUSION

For the aforementioned reasons, as well as those articulated by Appellants, the Court should reverse the decision below.

Respectfully submitted,

Jason B. Torchinsky*
*Counsel of Record*
Zack Henson
Holtzman Vogel Baran
Torchinsky & Josefiak, PLLC
2300 N Street, NW, Ste 643-A
Washington, DC 20037
Phone: (202) 737-8808
Fax: (540) 341-8809
jtorchinsky@holtzmanvogel.com

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because this brief contains 6,589 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Times New Roman size 14-point font with Microsoft Word.

Dated: February 14, 2024

*/s/ Jason Torchinsky*
Jason Torchinsky

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system, which constitutes service on all attorneys who have appeared in this case and are registered to use the ECF system.


*/s/ Jason Torchinsky*
Jason Torchinsky